1

2

3                                              O

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  STANLEY MCMULLEN,          )    Case No. EDCV 08-957-VAP
                               )    (PJWx)
12              Plaintiff,     )
                               )    **[Motion filed on October 6,**
13        v.                   )    **2008]**
                               )
14  SOUTHERN CALIFORNIA        )    **ORDER GRANTING IN PART AND**
    EDISON; EDISON             )    **DENYING IN PART DEFENDANTS'**
15  INTERNATIONAL, INC.;       )    **MOTION TO DISMISS**
    WILLIAM MARTIN FLANNERY,   )
16  an individual, and DOES    )
    1-10, INCLUSIVE,           )
17                             )
                Defendants.    )
18  _____  )

19

20        Defendants' Motion to Dismiss came before the Court

21  for hearing on November 3, 2008.  After reviewing and

22  considering all papers filed in support of, and in

23  opposition to, the Motion, as well as the arguments

24  advanced by counsel at the hearing, the Court GRANTS IN

25  PART and DENIES IN PART Defendants' Motion to Dismiss.

26                      **I. Background**

27        Plaintiff Stanley McMullen ("McMullen") worked for

28  Southern California Edison ("SCE") from 1983 to 2006 at

its power plant in the San Onofre annex.  (First Amended
Complaint ("FAC") ¶¶ 2, 4, 12, 27; Opposition ("Opp'n")
3.)   McMullen brings suit against his employer, SCE, and
its parent company, Edison International, Inc. ("EII").
He seeks relief based on the actions of coworkers and
supervisors during his years of employment.  (FAC ¶ 1.)
McMullen also brings suit against William Flannery
("Flannery"), McMullen's former supervisor.  (FAC ¶ 6.)
The Court refers to the defendants collectively as
"Defendants."

**A.   Facts**

    The facts are based on the FAC and the Request for
Judicial Notice, which the Court grants in part, as
explained below.

    **1.   The Court Grants in Part Defendants' Request
        for Judicial Notice.**

    Defendants seek to establish that McMullen worked on
a federal enclave and that there were previous
proceedings between the parties relevant to the events
before the Court.

    Defendants filed a Request for Judicial Notice of the
following documents: (a) a September 8, 1943 letter to
California's Governor which states "The United States of
America became vested with a valid title to certain land

in San Diego County, California . . . "; (b) a May 12, 1964 Grant of Easement from the United States government to SCE for operation of a nuclear electric generating station in Camp Pendleton; (c) former California Political Code § 34 and former California Business and Professions Code § 17200; (d) a Superior Court order sustaining demurrer by Defendants in <u>McMullen v. Southern California Edison</u> in the Superior Court of California, County of Los Angeles, California, case No. BC 378532; (e) Judgment for Defendants in the same.

Judicial notice is proper where facts are generally known or easily determined from sources the accuracy of which cannot reasonably be questioned. Fed. R. Evid. 201(b). Facts in public records are suitable for judicial notice. <u>Metropolitan Creditors' Trust v. PriceWaterHouseCoopers</u>, 463 F. Supp. 2d 1193, 1197 (E.D. Wash. 2006). The Court takes judicial notice of most of the materials submitted by Defendants because they are public records and relevant to the discussion below. Items (a) and (b) are certified by the Recorder/County Clerk of San Diego County to be certified copies of the documents they purport to be. These documents help establish that the location where McMullen worked was a federal enclave, as discussed below. Items (d) and (e) are copies of an order and a judgment, respectively, issued by the Superior Court of the State of California

3

for the County of Los Angeles regarding a controversy
between the parties before the Court, relevant to the
Court's discussion of McMullen's fourth claim.   The Court
declines to take judicial notice of item (c), historical
excerpts from California statutes, as it is not necessary
to the discussion below.   Plaintiff does not object to
the request for judicial notice.

### a.   The San Onofre Nuclear Generating Station is a Federal Enclave.

Defendants seek to establish through the materials
judicially noticed that the San Onofre Nuclear Generating
Station ("SONGS"), where McMullen worked, is a federal
enclave.[1]  Plaintiff admits he worked on a power plant on

---

[1]Recent decisions from the Southern District of California regarding claims alleged by a plaintiff who worked at SONGS provide a succinct outline of the federal enclave doctrine:

"Article I, Section 8, Clause 17 of the United States Constitution provides that Congress shall have the power to exercise exclusive legislation over all places purchased by the consent of the legislature of the state in which the same shall be.  This constitutional provision grants federal courts federal question jurisdiction over tort claims that arise on federal enclaves.  [citations]. Furthermore, the enclave clause permits the continuance of those state laws existing at the time of the surrender of sovereignty, except insofar as they are inconsistent with the laws of the United States or with the governmental use for which the property was acquired, unless they are abrogated by Congress, so that no area may be left without a developed legal system for private rights.  [citations]. . . . "Only state laws in effect at the time of cession or transfer of jurisdiction, however, can continue in operation.  See James Stewart & Co., 309 U.S. at 100, 60 S. Ct. 431."

a federal enclave (FAC ¶ 2; Opp'n 3) and he refers to it as the "San Onofre annex" to SCE.  Although neither party addresses this specifically, it appears that this San Onofre annex of SCE is SONGS.  Defendants and McMullen thus agree that SONGS was a federal enclave.  (See FAC ¶ 2 ("The EDISON property where the incidents took place is deemed a 'Federal Enclave' per the U.S. Constitution, Art. I Sec. 8, cl. 17."); Mot. 1.)  Other district courts have recognized SONGS as a federal enclave, relying on some of the same materials presented to this Court, for example a September 8, 1943 letter to Earl Warren.[2]

_____

[2] _Stiefel_ outlines the history of SONGS as a federal enclave:
"In 1939, California consented to allow the United States to acquire by purchase or condemnation any track of land within the state for the purpose of erecting forts or other needful buildings.  _See_ Cal. Stats. 1939, ch. 710, § 1, p. 2231 (Decl. Thomas M. McInerney Supp. Def.'s Mot. Req. Judicial Notice, Ex. D).  In 1942, the United States acquired Camp Pendleton through condemnation.  _See_ Law Enforcement at San Onofre Nuclear Generation Plant, 1 Op. Off. Legal Counsel 204, 204-05 (1977); _see also_ Letter from James Forrestal, Under Secretary of the Navy, to Earl Warren, California Governor (Sept. 8, 1943) (on file in Official Recorder's Office of San Diego County, California) (Decl. Thomas M. McInerney Supp. Def.'s Mot. Req. Judicial Notice, Ex. E) ("The United States of America became vested with valid title to certain lands in San Diego County, California on December 31, 1942 . . . . [F]or the establishment of Camp Joseph H. Pendleton . . . .").

"In 1963, Congress authorized the Secretary of the Navy to grant an easement allowing Southern California Edison Company and San Diego Gas and Electric Company to construct, operate, and maintain a nuclear electric generating station in Camp Pendleton Naval Reservation. _See_ Act of July 30, 1963, Pub. L. No. 88-82, 77 Stat. 115.  The U.S. Department of Justice has confirmed that

(continued...)

5

1  <u>Stiefel v. Bechtel</u>, 497 F. Supp. 1138, 1145-46 (S.D. Cal.

2  2007).  The Court therefore finds that SONGS is a federal

3  enclave.

4

5          **b.   The Court Takes Judicial Notice of the**

6                  **Superior Court Documents.**

7      Defendants also ask the Court to take judicial notice

8  of documents from a California Superior Court action

9  between McMullen and Defendants.  A judicially-noticed

10 fact must be one not subject to reasonable dispute in

11 that it is either (1) generally known within the

12 territorial jurisdiction of the trial court or (2)

13 capable of accurate and ready determination by resort to

14 sources whose accuracy cannot reasonably be questioned.

15 Fed. R. Evid. 201(b).  Public records are suitable for

16 judicial notice.  <u>Metropolitan Creditors' Trust v.</u>

17 <u>PriceWaterHouseCoopers</u>, 463 F. Supp. 2d 1193, 1197 (E.D.

18 Wash. 2006).  The Court takes judicial notice of the

19 Order and Judgment issued by the Superior Court.

20 (Request for Judicial Notice Exs. D, E.)

21 ─────────────────

22      [2](...continued)
   SONGS is the nuclear generating plant authorized by
23 Congress. . .

24
   "Furthermore, it is generally known in the community that
25 Camp Pendleton is a United States Marine Corp Base under
   the jurisdiction of the federal government. Accordingly,
26 the Court takes judicial notice of the fact that SONGS is
   located within the federal enclave of Camp Pendleton,
27 which was acquired by the United States no later than
   December 31, 1942." <u>Stiefel</u>, 497 F. Supp. 2d 1138, 1145-
28 46.

                              6

**2.   The History of McMullen's Employment at SONGS**

For the purposes of a Motion to Dismiss, the Court assumes the truth of all facts in the FAC.  SCE hired McMullen at its Rosemead headquarters in 1983 and terminated his employment in 2006.  McMullen is an effeminate gay man who suffered "harassment, discrimination, belittlement and intolerance" from colleagues, supervisors, subordinates, and others.  (FAC ¶¶ 12-13.)  For example, McMullen alleges he was forced to see other employees' sexually explicit images at work (FAC ¶ 14), told that he was going to hell because of his sexual orientation (FAC ¶ 15), singled out for exclusion from office events because he was an effeminate man (FAC ¶¶ 17, 43), singled out as an effeminate man from the privilege of wearing earrings at work (FAC ¶ 23), and chided and harassed about his effeminate appearance, including his haircut (FAC ¶ 24).  McMullen was subject to discriminatory comments.  For example, at a workplace tolerance training, McMullen had to endure comments like "there is no way in hell that I would even accept or work around faggots . . . ."  (FAC ¶ 16.)  McMullen also alleges that gay employees were treated in a manner different from, and worse, than heterosexual employees: McMullen encountered more barriers in obtaining the employee utility discount (FAC ¶ 14), obtaining family medical leave (FAC ¶ 18), and obtaining fringe benefits

such as being taken to lunch (FAC ¶ 43) because he lived
with a man.

### B.  Procedural History

McMullen's employment with SCE ended on August 17,
2006.  (FAC ¶ 27.)  On or about November 20, 2006, and
then again on February 13, 2007, McMullen filed
complaints against Defendants with the Department of Fair
Employment and Housing (DFEH).  (FAC ¶ 10.)  McMullen has
not supplied the Court with copies of the complaints.  He
received a right-to-sue letter from the DFEH dated March
1, 2007, which does not specify which of the two
complaints was closed.  (FAC Ex. A.)  McMullen does not
allege he obtained a right-to-sue letter from the EEOC.

Based on the record here, it is not clear when
McMullen filed suit in the Superior Court of the State of
California for the County of Los Angeles, but the Court
can infer that it was on some date after March 1, 2007.
He brought suit against SCE, EII, and Flannery, alleging
violations of the California Fair Employment and Housing
Act ("FEHA"), breach of the implied covenant of good
faith and fair dealing, violation of California Business
and Professions Code § 17200, wrongful termination in
violation of public policy, intentional infliction of
emotional distress, and negligent infliction of emotional
distress.  (Request for Judicial Notice Ex. D at 2:1-6.)

1   All of McMullen's claims arise out of his employment at
2   SONGS.  (Id.)

3

4       In an order dated May 8, 2008, Superior Court Judge
5   Elizabeth Allen White granted Defendants' Proposed Order
6   Sustaining Demurrers by Defendants EII, SCE, and Flannery
7   to McMullen's complaint.  (Request for Judicial Notice
8   Ex. D.)  The Superior Court judge found that SONGS was a
9   federal enclave; that "the locus of Plaintiff's
10  employment" controlled; and that therefore he could not
11  bring claims based on state laws.  (Request for Judicial
12  Notice Ex. D.)  The Superior Court entered judgment
13  against McMullen that same day.  (Request for Judicial
14  Notice Ex. E.)

15

16      On July 16, 2008, McMullen filed a Complaint against
17  Defendants in this Court; he filed an FAC on September
18  23, 2008, seeking relief under eight claims.  The first
19  three arise under Title VII (hostile work environment,
20  discrimination, and retaliation), while the last five
21  arise under state law (breach of the covenant of good
22  faith and fair dealing; violation of California Business
23  and Professions Code § 17200; wrongful termination;
24  intentional infliction of emotional distress; and
25  negligent infliction of emotional distress).
26  ///
27  ///
28

9

1   Defendants filed their Motion on October 6, 2008
2   along with their Request for Judicial Notice.  McMullen
3   filed his Opposition on October 21, 2008.  Defendants
4   filed their Reply on October 27, 2008.
5
6                    **II.  Legal Standard**
7        Under Rule 12(b)(6), a party may bring a motion to
8   dismiss for failure to state a claim upon which relief
9   can be granted.  As a general matter, the Federal Rules
10  require only that a plaintiff provide "'a short and plain
11  statement of the claim' that will give the defendant fair
12  notice of what the plaintiff's claim is and the grounds
13  upon which it rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47
14  (1957) (quoting Fed. R. Civ. P. 8(a)(2)); <u>Bell Atlantic</u>
15  <u>Corp. v. Twombly</u>, 550 U.S. __, 127 S. Ct. 1955, 1964
16  (2007).  In addition, the Court must accept all material
17  allegations in the complaint – as well as any reasonable
18  inferences to be drawn from them – as true.  <u>See</u> <u>Doe v.</u>
19  <u>United States</u>, 419 F.3d 1058, 1062 (9th Cir. 2005); <u>ARC</u>
20  <u>Ecology v. U.S. Dep't of Air Force</u>, 411 F.3d 1092, 1096
21  (9th Cir. 2005).
22
23       "While a complaint attacked by a Rule 12(b)(6)
24  motion to dismiss does not need detailed factual
25  allegations, a plaintiff's obligation to provide the
26  'grounds' of his 'entitlement to relief' requires more
27  than labels and conclusions, and a formulaic recitation
28

                                10

1  of the elements of a cause of action will not do." <u>Bell</u>

2  <u>Atlantic</u>, 127 S. Ct. at 1964-65 (citations omitted).

3  Rather, the allegations in the complaint "must be enough

4  to raise a right to relief above the speculative level."

5  <u>Id</u>. at 1965.

6

7      Although the scope of review is limited to the

8  contents of the complaint, the Court may also consider

9  exhibits submitted with the complaint, <u>Hal Roach Studios,</u>

10 <u>Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19

11 (9th Cir. 1990), and "take judicial notice of matters of

12 public record outside the pleadings," <u>Mir v. Little Co.</u>

13 <u>of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).

14

15                    **III.  Discussion**

16     Defendants seek dismissal of all of McMullen's

17 claims.  They seek dismissal of his first three claims,

18 asserting McMullen complied with neither the procedural

19 nor substantive requirements for bringing a request for

20 relief under Title VII.  They seek dismissal of his

21 fourth claim, for breach of the implied covenant of good

22 faith and fair dealing, on the basis it is barred under

23 the principle of res judicata.  They seek dismissal of

24 his remaining four state law claims because McMullen

25 worked at SONGS and SONGS is a federal enclave.  The

26 Court denies the Motion as to the first three claims;

27 grants the Motion without leave to amend as to the fourth

28

claim; and grants the Motion with leave to amend as to the fifth through eighth claims.

## A.   The Court Denies the Motion as to McMullen's First Three Claims.

McMullen's first three claims, for hostile work environment, "discrimination on the basis of sex/ sexual orientation", and retaliation, arise under Title VII. (FAC.)  Defendants ask the Court to dismiss them because (1) McMullen did not exhaust his administrative remedies as he has not obtained a right-to-sue letter from the EEOC and (2) McMullen's allegations do not create a claim for discrimination on the basis of sex.

### 1.   Plaintiff Exhausted Administrative Remedies.

Defendants argue McMullen's Title VII claims should be dismissed because "Plaintiff has never obtained any right to sue letter from the EEOC as his DFEH right to sue letter correctly advises he was required." (Reply 2.)  McMullen did receive a right-to-sue letter from the DFEH.  That letter advised McMullen: "If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier." (FAC Ex. A.)

1        Defendants rely on <u>Roman v. County of Los Angeles</u>, 85
2   Cal. App. 4th 316 (2000), a California Court of Appeal
3   case in which the state court found that a DFEH right-to-
4   sue letter did not allow a plaintiff to bring a Title VII
5   suit.  <u>Id.</u> at 326.  When the state court issued its
6   opinion, it noted "we are referred to no case, and have
7   found none, dealing with the precise issue presented
8   here, whether a DFEH right-to-sue letter satisfies the
9   jurisdictional requirements for a claim under title VII."
10  <u>Id.</u> at 325-26.

11

12       Defendants' reliance on <u>Roman</u> is misplaced, however.
13  The Ninth Circuit has since issued an opinion that dealt
14  directly with this question, and held the DFEH letter
15  sufficient.  <u>See</u>  <u>Surrell v. California Water Service</u>
16  <u>Co.</u>, 518 F. 3d 1097, 1105 (9th Cir. 2008).  The Court
17  found where "a plaintiff is entitled to receive a right-
18  to-sue letter from the EEOC, a plaintiff may proceed
19  absent such a letter, provided she has received a right-
20  to-sue letter from the appropriate state agency."
21  <u>Surrell</u>, 518 F. 3d at 1105.

22

23       In <u>Surrell</u>, as here, the plaintiff filed a
24  discrimination charge with the DFEH, which "provided her
25  with a right-to-sue letter and advised her that she could
26  obtain a federal right-to-sue letter from the Equal
27  Employment Opportunity Commission (EEOC)."  <u>Surrell</u>, 518
28

1   F.3d at 1103.   In <u>Surrell</u>, as here, the plaintiff never
2   filed a charge directly with the EEOC, but the Ninth
3   Circuit found that the DFEH charge was constructively
4   filed with the EEOC.   <u>Surrell</u>, 518 F.3d at 1104.   Like
5   McMullen, the plaintiff in <u>Surrell</u> never received a
6   right-to-sue letter from the EEOC, but the Ninth Circuit
7   "adopt[ed]" the rule that "once a plaintiff is *entitled*
8   to receive a right-to-sue-letter . . . it makes no
9   difference whether the plaintiff actually obtained it."
10  <u>Surrell</u>, 518 F.3d at 1105.   As McMullen received a right-
11  to-sue letter from the DFEH and was entitled to receive
12  (but did not receive) a right-to-sue letter from the
13  EEOC, the Court finds under <u>Surrell</u> that McMullen
14  exhausted administrative remedies.

15

16       Defendants also allege for the first time in their
17  Reply that McMullen's suit is barred because he filed
18  suit in state court on October 4, 2007 which Defendants
19  allege was too late.   (Reply 3.)   Federal law requires a
20  person who claims to be aggrieved under Title VII to file
21  a claim within 90 days of receipt of a right-to-sue
22  letter.   42 U.S.C. § 2000e-5(f).   At the November 3, 2008
23  hearing on this Motion, Defendants' counsel renewed his
24  statute of limitations argument and suggested that if
25  Plaintiff intends to rely on an equitable tolling theory,
26  the Court could require him to plead the facts necessary
27
28

1   to establish the application of that doctrine in any

2   Second Amended Complaint filed.

3

4       The Court declines Defendants' request to dismiss the

5   first three claims as untimely filed.  It is not plain on

6   the face of the Complaint that these claims are barred as

7   untimely, because the date on which McMullen filed suit

8   in state court is not apparent.  Furthermore, Defendants

9   improperly raised this argument for the first time in the

10  Reply.  See, e.g., Katz v. Children's Hospital, 28 F.3d

11  1520, 1534 (9th Cir. 1994) (raising new ground for

12  summary judgment in reply improper as moving party bears

13  the burden of placing the nonmoving party on proper

14  notice).  Nevertheless, to the extent Plaintiff does

15  intend to rely on an equitable tolling theory, Defendants

16  correctly point out that he would be well-advised to

17  plead facts supporting this in his amended pleading, to

18  avoid another round of pleading motions where the Court

19  is asked to take judicial notice of the Superior Court

20  filing date.

21

22      **2.   Plaintiff Alleges Facts Constituting a**

23           **Claim Under Title VII.**

24      Accepting all the facts in the FAC as true, McMullen

25  endured years of harassment at the hands of his

26  colleagues, coworkers, supervisors, and subordinates.

27  Defendants ask the Court to dismiss McMullen's Title VII

28

claims because McMullen alleges that "Flannery and others
harassed him because he is gay and or because of his
lifestyle . . . There is no strained interpretation of
his claims which create a claim for discrimination on the
basis of his being a man or for because of [*sic*] sex
itself."  (Reply 3.)[3]


    The Court denies Defendants' Motion as to the first
three claims because Defendants misstate Title VII
jurisprudence.  First, McMullen's third claim, for
retaliation, is based on McMullen's "reporting
discriminatory actions and or assisting others in doing
so."  (FAC ¶ 52).  Although the discrimination
experienced by others seems to stem from age
discrimination or other unnamed biases (see FAC ¶ 52),
the Court is not convinced at this early stage that
McMullen cannot present facts to the Court consistent
with a classic Title VII retaliation claim.

_____

    [3]Plaintiff's counsel cites Slatkin v. University of
Redlands, 88 Cal. App. 4th 1147 (2001), which deals with
an allegation of anti-Semitism.  He also relies on Guz v.
Bechtel Nat. Inc., 24 Cal. 4th 317 (2001), which concerns
termination of a long-term employee but not sexual
orientation.  (Opp'n 4.)  Plaintiff's counsel alleges
that "sex/ gender/ sexual orientation" are
"interchangeable. . . because PLAINTIFF suffered
discrimination due to his sex because of his sexual
orientation,"  (Opp'n 4:20-24), but cites no authority
for this proposition.  Same-sex sexual harassment
certainly violates Title VII, and harassment for failure
to conform to gender stereotypes violates Title VII, but
there appears to be no authority they are
"interchangeable."

Second, McMullen's first and second claims rely on facts giving rise to valid sex discrimination claims under Title VII as interpreted by the United States Supreme Court and the Ninth Circuit.  McMullen alleges he was forced to see other employees' sexually explicit images at work (FAC ¶ 14), told that he was going to hell because of his sexual orientation (FAC ¶ 15), singled out for exclusion from office events because he was an effeminate man (FAC ¶¶ 17, 43), singled out as an effeminate man from the privilege of wearing earrings at work (FAC ¶ 23), chided and harassed about his effeminate appearance, including his haircut (FAC ¶ 24) and subjected to slurs such as "faggot" (FAC ¶ 16).  These facts make out a valid claim under Title VII as interpreted by the Ninth Circuit in <u>Nichols v. Azteca Restaurant Enterprises, Inc.</u>, 256 F.3d 864 (9th Cir. 2001).

In <u>Nichols</u>, the Court considered the claim of a male employee who "was verbally harassed by some male co-workers and a supervisor because he was effeminate and did not meet their views of a male stereotype"  256 F.3d 864, 869.  The Court "agree[d] with [the plaintiff] that the behavior of his co-workers and supervisor violated Title VII. . . "  258 F.3d at 869.  As McMullen's employment experience also included verbal harassment based on effeminacy and failure to conform to male

stereotypes, the Court finds that McMullen alleges a
valid Title VII claim.

In <u>Nichols</u>, the plaintiff testified at trial that he
endured behavior similar to that alleged by McMullen.
Plaintiff testified "he endured an unrelenting barrage of
verbal abuse . . . employees habitually called him
sexually derogatory names . . . and taunted him for
behaving like a woman."  258 F.3d at 872.  His coworkers'
behavior included mocking the plaintiff for "walking and
carrying his serving tray 'like a woman' and taunt[ing]
him in Spanish and English as, among other things, a
'faggot' and a 'fucking female whore.'" 256 F.3d at 870.
They also derided the plaintiff for "not having sexual
intercourse with a waitress who was his friend."  256
F.3d at 874.  The plaintiff in <u>Nichols</u> asserted that "the
verbal abuse . . . was based upon the perception that he
[was] effeminate and, therefore, occurred because of sex.
In short, [plaintiff] contend[ed] that he was harassed
because he failed to conform to a male stereotype." 256
F.3d at 874.

The Ninth Circuit held in <u>Nichols</u> that with these
facts the plaintiff had made out a claim under Title VII:
a man's claim that he was harassed because he failed to
conform to stereotypical male behavior was just as valid
as the claim upheld by the U.S. Supreme Court in <u>Price</u>

18

1 <u>Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989).  There, the
2 Supreme Court found a woman denied partnership because
3 she did not act in a sufficiently feminine way had stated
4 a claim under Title VII.  <u>Nichols</u> at 874, 875 ("Following
5 <u>Price Waterhouse</u>, we hold that the verbal abuse at issue
6 occurred because of sex."  <u>Id.</u> at 875.).

7

8     McMullen alleges he was harassed and discriminated
9 against, citing facts similar to those cited by the
10 <u>Nichols</u> plaintiff.  Even if McMullen's tormenters were
11 less explicit that those in <u>Nichols</u> that McMullen behaved
12 'like a woman,' and even though sexual orientation does
13 not appear in the text of Title VII, McMullen certainly
14 alleges harassment based on being effeminate and not
15 conforming to male stereotypes.  This is sufficient to
16 state a claim under Title VII.

17

18 **B.   The Court Grants the Motion as to McMullen's**
19      **Fourth Claim.**
20     Defendants argue McMullen's fourth claim, for breach
21 of the covenant of good faith and fair dealing, brought
22 in connection with his termination from employment at
23 SONGS, is barred because it was previously dismissed as a
24 matter of law in the proceedings before the Superior
25 Court.  (Mot. 8 citing Request for Judicial Notice Ex.
26 D.)  The Court takes judicial notice of the Superior
27 Court Order sustaining Defendants' demurrers to this
28

1    claim, as discussed above.  The Order states that

2    McMullen's claim based on "breach of the covenant of good

3    faith and fair dealing" was dismissed by the Superior

4    Court without leave to amend because it failed to "allege

5    facts which otherwise overcome the presumptive at will

6    nature of his employment" or "state a cause of action

7    independent from termination of his employment" or a

8    claim which was "not otherwise barred by the federal

9    enclave doctrine."  (Request for Judicial Notice Ex. D at

10   4.)

11

12       The Court grants Defendants' Motion as to McMullen's

13   fourth claim without leave to amend because a final

14   judgment has been entered regarding this claim in state

15   court.  "The United States District Court, as a court of

16   original jurisdiction, has no authority to review the

17   final determinations of a state court in judicial

18   proceedings."  <u>Worldwide Church of God v. McNair</u>, 805

19   F.2d 888, 890 (9th Cir. 1986).

20

21   **C.   The Court Grants the Motion as to McMullen's**

22       **Last Four Claims, Based on State Law.**

23       Plaintiff's last four remaining claims[4] are based on

24   state law.  State law claims established after a

25   _____

26       [4]McMullen's remaining claims are claims five through
     eight: violation of California Business & Professions
27   Code § 17200; wrongful termination; intentional
     infliction of emotional distress; negligent infliction of
28   emotional distress.

1   territory was established as a federal enclave are not

2   valid.  <u>Taylor v. Lockheed Martin Corp.</u>, 78 Cal. App. 4th

3   472, 481-82 (2000); <u>Stiefel</u>, 497 F. Supp. 2d at 1156-57.

4   Plaintiff seeks to escape this bar in his Opposition by

5   alleging that "all major employment decisions of which he

6   complains occurred at company headquarters in Rosemead,

7   California." (Opp'n 3.)  McMullen does not argue in his

8   Opposition that his state law claims are not barred based

9   on the year in which the laws on which he seeks relief

10  were enacted; the Court therefore takes him to concede

11  that they arose after SONGS became a federal enclave.

12

13      The Court turns to McMullen's argument that his state

14  law claims remain because they arose in Rosemead, which

15  is off-enclave.  McMullen states in his Opposition that

16  he was "supervised from the Human Resources (HR) out of

17  Rosemead, CA."  (Opp'n 3 citing FAC ¶¶ 4-5.)

18

19      McMullen alleges that these facts are sufficient

20  under <u>Taylor</u> to save his state-law claims.  In <u>Taylor</u>,

21  the California Court of Appeal reviewed a Superior

22  Court's grant of summary judgment in favor of a defendant

23  located on federal enclave.  78 Cal. App. at 479-81.  The

24  Court of Appeal found summary judgment proper in part

25  because the disciplinary measures of which the plaintiff

26  complained were *not* shown to have taken place off-

27  enclave.  <u>Taylor</u>, 78 Cal. App. at 480-81.  In <u>Taylor</u>, the

28

1   Court also noted that there was no showing that
2   plaintiff's work was performed off-enclave or that the
3   Human Resources department was located off-enclave.
4   <u>Taylor</u>, 78 Cal. App. at 480-81.  McMullen seeks to
5   preserve his claim because he has alleged that the Human
6   Resources office is located off-enclave and that some
7   events took place off-enclave, although it is difficult
8   to discern which events.  (<u>See</u> Opp'n 3.)
9
10      <u>Taylor</u> does not guarantee that McMullen's claims will
11   go forward for two reasons.  First, the FAC contradicts
12   McMullen's statements in his Opposition about the
13   importance of what happened off-enclave to his claims.
14   In the FAC, McMullen alleges in his statement of
15   jurisdiction "the EDISON property where the incidents
16   took place is deemed a 'Federal Enclave.'"  (FAC ¶ 2.)
17   McMullen does not specify what 'the incidents' are, but
18   as the statement is used to establish jurisdiction, it
19   implies that the events giving rise to the claim occurred
20   at SONGS, not in Rosemead.  Thus, even if Human Resources
21   were located off-enclave, it would appear irrelevant
22   because the events giving rise to the claim occurred at
23   SONGS.  <u>See Taylor</u>, 78 Cal. App. 4th at 479-81.
24
25      Second, Plaintiff's Opposition reads as though the
26   FAC alleges important decisions were made in Rosemead but
27   the only paragraphs of the FAC cited by Plaintiff in his
28

1  Opposition are the fourth and fifth.  (See Opp'n 3:13-
2  17.)  These refer only to the hiring of McMullen at the
3  Rosemead headquarters and to the distribution of
4  paychecks and administration of insurance and workers'
5  compensation from that location.  Hiring and distribution
6  of paychecks are not the facts on which McMullen seeks
7  relief.

8

9      In contrast, the FAC does not reveal where events
10 more central to the claim before the Court occurred.  For
11 example, the FAC asserts that McMullen's employment was
12 terminated by a letter but curiously does not state that
13 Human Resources issued it from Rosemead; indeed the FAC
14 is very precise that the letter was not issued on
15 letterhead, from which the Court is perhaps to draw the
16 inference that Human Resources did not terminate
17 McMullen's employment.  (FAC ¶ 27.)  Most of the FAC is
18 devoted to the facts of McMullen's harassment by co-
19 workers and others during day-to-day work, apparently at
20 two offices at SONGS, not in Rosemead.  For example,
21 McMullen alleges he was denied access to meetings at the
22 "front office"  (see FAC ¶ 17) but does not reveal where
23 the front office is.

24

25     As the FAC is both vague and contradictory about what
26 occurred in Rosemead and its relevance to McMullen's
27 claims, the Court grants Defendants' Motion with leave to
28

amend.  Plaintiff must file any amended complaint no later than November 28, 2008, stating precisely which events and decisions occurred in Rosemead (the non-federal enclave), and approximately when they occurred.

## IV. Conclusion

For the reasons above, the Court DENIES the Motion as to the first three claims in the First Amended Complaint; GRANTS the Motion WITHOUT leave to amend as to the fourth claim; and GRANTS the Motion WITH leave to amend as to the fifth through eighth claims.

Dated:  November 17, 2008

VIRGINIA A. PHILLIPS
United States District Judge